UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS M. COOLEY LAW SCHOOL,                    Case No. 17-13708

                Plaintiff,                    SENIOR U.S. DISTRICT JUDGE
v.                                                                        ARTHUR J. TARNOW

THE AMERICAN BAR ASSOCIATION,                    U.S. MAGISTRATE JUDGE
                                                                                DAVID R. GRAND

                Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION [3]**

On November 14, 2017, Plaintiff Thomas M. Cooley Law School ("Cooley") filed a Complaint [1] and a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. The Court held a Status Conference on November 15, 2017. Defendant American Bar Association ("ABA") filed a Response [21] on November 17, 2017. Plaintiff filed a Reply [25] on November 19, 2017. Defendant filed a Surreply [28] on November 27, 2017. The Court held a final pre-hearing conference November 30, 2017.

For the reasons stated below, Plaintiff's Motion for TRO [3] is **DENIED**.

**FACTUAL BACKGROUND**

This case concerns a law school's attempt to prevent current and prospective students from having access to accurate information about its accreditation status.

Plaintiff Cooley is a law school based in Lansing, Michigan. Defendant ABA is the agency approved by the U.S. Department of Education to accredit programs leading to the J.D. degree.

Each year, the ABA Council establishes Standards and Rules of Procedure for Approval of Law Schools ("ABA Standards"). The ABA Standards set forth the criteria law schools must meet in order to obtain and retain accreditation.

The ABA Council delegates authority to the ABA Accreditation Committee to perform "interim monitoring" to evaluate whether law schools remain in compliance with ABA Standards.

The ABA last reapproved Cooley in 2014. On May 19, 2016, the ABA sent a letter to Cooley asking the School to provide the ABA with "additional information so that the Committee can determine if the Law School continues to operate in compliance with [six] Standards[.]" Letter from Barry A. Currier, Managing Dir., Am. Bar Ass'n, to Dean Don LeDuc, President and Dean, Cooley Law Sch., Re: Interim Monitoring of Law Schools (May 19, 2016). In response to the request, Cooley submitted additional information to demonstrate compliance.

The Committee met on September 14-15, 2017 to review Cooley's compliance with the Standards. Following the meeting, the Committee sent Cooley a Letter and Accreditation Decision ("Decision") on October 4, 2017. The Decision set forth the Committee's findings of fact and conclusions. The

Committee concluded that Cooley remained in compliance with Standards 202(a), 301(a), 309(b), and 501(a); however, it determined that Cooley was not in compliance with Standard 501(b) and Interpretation 501-1. In its Decision, the Committee requested that Cooley submit a report by February 1, 2018 with all relevant information necessary to demonstrate compliance with Standard 501(b).

Standard 501(b) requires that law schools "only admit applicants who appear capable of satisfactorily completing its program of legal education and being admitted to the bar." Interpretation 501-1 sets forth factors to be considered in assessing compliance with 501(b).

Cooley appealed the Committee's Decision to the Council. The Council held a hearing on November 4, 2017. On November 13, 2017, the Council sent a Letter to Cooley affirming the Committee's Decision and notifying Cooley that the Letter would be posted in accordance with Department of Education Regulation 34 C.F.R. § 602.26 within 24 hours.

Upon its receipt of the November 13, 2017 Letter, Cooley emailed the Council requesting that the ABA refrain from publication and expressing its intent to appeal the Decision. The ABA Standards and Rules do not authorize an Appeals Panel to review the Council's finding of non-compliance with Standard 501(b). *See infra* pp. 6, Rule 4.

On November 14, 2017, the Letter was posted on the ABA website in the Adverse Actions section.[1] The publication of the November 13, 2017 Letter is the subject of this action. Over the past few weeks, the Letter and information about this lawsuit have been widely disseminated in the public sphere.

In its Motion for TRO [3], Cooley asks the Court to: find that the ABA acted illegally in publishing the Letter; require the ABA to remove the Letter from its website; and order the ABA to withdraw letters sent to other agencies.

### ANALYSIS

"A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001). When evaluating a motion for preliminary injunction, the Court must consider four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

---

[1] Additional non-compliance letters are posted on this section of the ABA website. *See* ADVERSE ACTIONS (Dec. 11, 2017), https://www.americanbar.org/groups/legal_education/news_announcements/public-notice/adverse-actions.html.

*Id.* at 809 (quoting *Rock & Roll Hall of Fame v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)).[2]

The moving party bears the burden of proving that the circumstances clearly demand injunctive relief. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### I.      Cooley has not demonstrated a likelihood of success on the merits

34 C.F.R. § 602.26(c) requires the ABA to provide written notice to the public within 24 hours of notifying a law school of the following decisions: "(1) A final decision to place an institution or program on probation or an equivalent status; (2) A final decision to deny, withdraw, suspend, revoke, or terminate the accreditation or preaccreditation of an institution or program; and (3) A final decision to take any other adverse action, as defined by the agency, not listed in paragraph (b)(2) of this section[.]"

The ABA Standards and Rules of Procedure set forth the following applicable rules and practices:

---

[2] The ABA submits that Cooley must satisfy a substantially higher burden of proof in this case because it involves a prior restraint on speech. In *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996), *opinion clarified* (May 8, 1996) (internal citation omitted), the Sixth Circuit explained: "the inquiry that the court must conduct [in the case of a prior restraint on speech] is different. In the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself." Despite citing *Procter*, the ABA does not apply the *Procter* standard in its analysis. Because both parties set forth their arguments under the *Bonnell* factors, the Court conducts its analysis accordingly.

> Rule 49: Except as otherwise provided in these Rules or Internal Operating Practices, all matters relating to the accreditation of a law school, including any proceedings, hearings or meetings of the Committee or Council, shall be confidential.

> Internal Operating Practice 4(c): Managing Director shall provide written notification to the public within 24 hours of the time the Managing Director notifies the law school in writing of any final decision to . . . find a law school significantly out of compliance with one or more Standards[.]

> Rule 4: An Appeals Panel has authority to consider appeals of the following decisions of the Council: (a) Denial of provisional approval; (b) Denial of full approval; or (c) Withdrawal of provisional or full approval.

Cooley submits that it is likely to succeed on its claim that the ABA acted illegally because 34 C.F.R. § 606.26 does not authorize the ABA to publish the Letter. Cooley argues that the Letter is not a "final decision to take adverse action," but rather, a preliminary and remediable finding of non-compliance with Standard 501(b).

As the ABA notes in its Response [21], Cooley fails to even argue that it has shown a likelihood of success on the underlying merits of the case. In its Complaint [1], Cooley alleges, among other things, that the ABA violated common-law due process (Count V) and the Higher Education Act (Count VII). But, Cooley's Motion [3] and Reply [25] overlook the underlying claims and strictly address the applicability of 34 C.F.R. § 606.26. In its Proffer [37], Cooley

abruptly concludes that the Council neither conducted substantial evidence review nor reviewed the record as a whole. However, Cooley does not offer any evidence (or case law) to support such claims.

Even assessing the merits of Cooley's claim concerning 34 C.F.R. § 606.26, the Court finds that Cooley has not demonstrated a likelihood of success.[3] 34 C.F.R. § 606.26 plainly requires that the ABA publish final decisions to take adverse action, as defined by the agency.

First, Cooley has failed to persuade the Court that the Council's Decision is not final. Cooley is not entitled to appeal the Decision under ABA Standards Rule 4.

Second, Cooley has failed to persuade the Court that "adverse action" excludes findings of non-compliance. Internal Operating Practice 4(c) explicitly requires that the ABA provide written notification to the public of any final decision to find a law school significantly out of compliance with one of the Standards. In the context of 34 C.F.R. § 602.26, the Department of Education has

---

[3] In deciding this Motion for TRO [3], the Court need not, and does not, address the ABA's argument that its speech on accreditation is protected by the First Amendment. Nevertheless, the Court notes that while the ABA has cited to several cases in which courts have held that the ABA's speech is protected by the First Amendment, *see, e.g.*, *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, No. 3:11-CV-608, 2012 WL 137851, at *19 (E.D. Tenn. Jan. 18, 2012); *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435, 442 (E.D. Pa. 1996), *aff'd,* 107 F.3d 1026 (3d Cir. 1997); *Zavaletta v. Am. Bar Ass'n*, 721 F. Supp. 96, 98 (E.D. Va. 1989), Cooley has not cited to any authority that supports its argument to the contrary.

explained: "noncompliance is viewed as significant if . . . the area of non-compliance implicates institutional integrity . . . or the area of noncompliance is one for which notice to the public is required in order to serve the best interests of students and prospective students." Letter from Ted Mitchell, Under Sec'y, U.S. Dep't of Educ., to Federally Recognized Accrediting Agencies, Clarification of Terminology and Requirements for Accrediting Agency Reporting to the U.S. Dep't. of Educ. (Nov. 16, 2016).

Cooley's non-compliance with Standard 501(b), which requires that the School only admit applicants who appear capable of satisfactorily completing its program and being admitted to the bar, certainly implicates the School's integrity. Furthermore, it is in the best interests of Cooley's students to be made aware of its non-compliance with Standard 501(b). As future applicants to the bar, students should have access to reliable information to enable them to make informed decisions on where to attend law school.

## II.    Cooley will not suffer irreparable harm

Cooley argues that it continues to suffer irreparable reputational harm because of the publication of the Letter. Cooley further argues that a Court order in its favor would send a powerful message to bloggers, journalists, and the public that the ABA acted illegally.

The Court is unsympathetic to this argument. Now that word is out, Cooley's alleged reputational injury may not be remedied by the relief it seeks. Cooley's decision to institute, and proceed with, this action is the primary cause for the reputational harm alleged. *See Lincoln Mem'l Univ.*, 2012 WL 137851, at *19 (holding that the law school failed to demonstrate that the alleged reputational harm would be undone by removing the memorandum from the ABA's website, particularly where the school's filing of the lawsuit garnered the attention of the media). Cooley's argument ignores the reality that prospective students have already drawn conclusions about the School because of this lawsuit. Cooley is free to try to mitigate any reputational injury by broadcasting its belief that the ABA acted illegally in the public arena.

### III. A preliminary injunction may cause substantial harm to others

Granting Cooley the injunctive relief it seeks may substantially harm the ABA and prospective students. With respect to the ABA, issuing such an order may disrupt the agency's accreditation processes and prevent it from executing duties delegated to it by the Department of Education. *See Hampton Univ. v. Accred. Council For Pharm. Edu.*, 611 F. Supp. 2d 557, 566 (E.D. Va. 2009) (considering whether an injunction "would set a precedent that might lead every pharmacy school or program accredited by ACPE to sue and move for a preliminary injunction if ACPE places it on probation.").

More importantly perhaps, an order requiring the ABA to retract truthful information from the public will harm prospective law students who are in the midst of the application process. Withdrawing the Letter may also mislead prospective students into believing that the ABA has found Cooley in compliance with all of its Standards. *See Philadelphia Wireless Tech. Inst. v. Accrediting Comm'n of Career Sch. & Colleges of Tech.*, No. CIV. A. 98-2843, 1998 WL 744101, at *8 (E.D. Pa. Oct. 23, 1998).

### IV.   A preliminary injunction is not in the public interest

Ensuring that prospective students receive prompt and accurate information is in the public interest. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001) (noting that the "public interest is always served in promoting First Amendment values and in preserving the public domain from encroachment."); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (explaining that preventing future consumers from being misled serves the public interest); *Lincoln Mem'l Univ.*, 2012 WL 137851, at *20 (holding that "there is a public interest in having those who look to the Section's evaluation of legal education receive prompt and accurate information."); *Allen, Allen, Allen & Allen v. Williams*, 254 F. Supp. 2d 614, 629 (E.D. Va. 2003) (noting that the public has a strong interest in the ability to access

truthful information about lawyers). That "prospective law students deserve accurate, reliable information about a school's accreditation status" [Dkt. #25 at 2] is uncontroversial.

## CONCLUSION

Cooley has failed to meet its burden of demonstrating that the circumstances clearly demand a preliminary injunction. Cooley may continue to litigate its claim that the ABA acted illegally in publishing the Letter; but, granting a TRO that would remove accurate information from the public sphere is wholly inappropriate at this juncture in the proceedings.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for TRO [3] is **DENIED**.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: December 12, 2017                Senior United States District Judge